UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20115-CR-DAMIAN/D'Angelo

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.

**CHANARD MIKEIS ROBINSON**,

    Defendant.

_____/

### ORDER ADOPTING REPORT AND RECOMMENDATION FINDING DEFENDANT COMPETENT PRESENTLY TO STAND TRIAL [ECF NO. 138]

THIS CAUSE came before the Court on Magistrate Judge Ellen F. D'Angelo's Report and Recommendation Finding Defendant Competent Presently to Stand Trial, entered on November 21, 2025 ("Report") [ECF No. 138], relating to competency proceedings initiated by Defendant's Motion to Conduct Competency Evaluation, filed on July 19, 2024 [ECF No. 21].

THIS COURT has reviewed Judge D'Angelo's Report and the pertinent portions of the record, including Defendant, Chanard Mikeis Robinson's ("Defendant" or "Robinson"), Objections to Magistrate Judge's Report and Recommendation, filed on December 26, 2025 ("Objections") [ECF No. 145], and the United States of America's Response to Defendant's Objections, filed on January 2, 2026 ("Response to Objections") [ECF No. 146], and is otherwise fully advised.[1]

---

[1] While it was procedurally improper for Defendant to continue submitting filings containing argument as to Judge D'Angelo's Report on competency after briefing had concluded, *see* ECF Nos. 147, 148, 149, the undersigned also considered those filings prior to issuing this Order.

## I.  BACKGROUND

After carefully considering the Motion and its associated briefing, including exhibits, expert testimony, and argument from the parties heard on September 3, 2025 [ECF No. 118], Judge D'Angelo issued the Report, recommending that Robinson be found competent presently to stand trial in this case. The Report summarizes the relevant background and, therefore, this Court will not set out the background of the proceedings in detail here.

### A. *Competency Proceedings.*

As relevant here, Robinson filed an unopposed Motion for Medical Exam as to Competence [ECF No. 21], which this Court granted on July 23, 2024. [ECF No. 25]. In that Order, this Court directed that Robinson be transported to a federal medical center for a comprehensive psychological or psychiatric evaluation addressing his competency to proceed. Dr. Lauren Schumacher ("Dr. Schumacher") evaluated Defendant at the Federal Detention Center ("FDC") in Miami and issued a September 12, 2024 report. [ECF No. 29 ("Schumacher First Report")]. Dr. Mark J. Mills also evaluated Defendant at FDC and memorialized his opinions in an April 10, 2025 letter. [ECF No. 71 ("Mills First Letter")].

During a December 12, 2024 Status Conference, the Court set the matter for an evidentiary hearing to determine competency. [ECF No. 56]. After several continuances of the evidentiary hearing (*see* ECF Nos. 34, 35, 63, 70, 79), the Government asserted an unopposed request for a second competency evaluation (*see* ECF No. 81), which this Court granted. [ECF No. 83]. Dr. Mills evaluated Defendant a second time at FDC on June 5, 2025, and memorialized his opinions in a June 8, 2025 letter. [ECF No. 88 ("Mills Second Letter")]. Dr. Schumacher also evaluated Defendant a second time and memorialized her opinions in an August 7, 2025 report. [ECF No. 108 ("Schumacher Second Report")]. After a few more

2

continuances (*see* ECF Nos. 84, 105, 114), the Magistrate Judge held an evidentiary hearing on September 3, 2025. [ECF No. 118].

### B. Judge D'Angelo's Report.

Following the evidentiary hearing, Magistrate Judge D'Angelo determined that Robinson is competent presently to stand trial. *See generally* Report. In the Report, Judge D'Angelo compared the findings of Dr. Schumacher and Dr. Mills.

Dr. Schumacher reviewed BOP, medical, and psychological records, interviewed Robinson, and performed (or attempted to perform) psychological testing on cognitive functioning and psychological/personality functioning in reaching the conclusions of her First Report. *See* Rpt. 4-5 (citing ECF No. 29). Dr. Schumacher found general evidence of malingering and that Robinson's "results on psychological testing in various domains reflect his level of functioning is higher than what he was attempting to portray." *Id.* (citing ECF No. 29 at 12). Dr. Schumacher concluded that "[w]hile the true extent of his legal knowledge and abilities was difficult to determine given his uncandid presentation, there is no evidence of any acute phase of mental illness that would preclude his understanding of the legal process and a capacity to assist in his own defense, if motivated to do so." ECF No. 29 at 12.

For her Second Report, Dr. Schumacher reviewed additional external materials including prior mental health records, Dr. Mills's First Letter, and supplemental BOP, medical, and psychological records, monitored telephone calls placed by Robinson on various dates, and she spoke to correctional staff regarding Robinson's adjustment to his unit. *See* Rpt. at 5 (citing ECF No. 108). In Dr. Schumacher's Second Report, she acknowledged that Robinson was diagnosed with schizophrenia in June of 2023, but observed that his "clinical presentation spanning over a year at the FDC Miami is inconsistent with experience of an acute phase of mental illness, such as a psychotic disorder[.]" *See* Rpt. at 6 (citing ECF No.

3

108 at 12). She reaffirmed her finding of malingering, relying on the observation of "discrepancies in his reported experience of symptoms and behavioral observations, as well as previous psychological testing results reflective of intentional exaggeration/fabrication of symptoms." *Id.*

Dr. Mills's First Letter is based on an hour-long clinical interview with Robinson and his review of Dr. Schumacher's First Report. At this clinical interview, Dr. Mills and Robinson had a "brief discussion," during which Robinson expressed distrust against his attorney and Dr. Mills because they are being compensated by the same Government prosecuting him, and which culminated in Robinson ultimately agreeing to take a cognitive assessment, and then stating that he could not read and leaving the evaluation. *See* ECF No. 71 at 1-2. Dr. Mills states that Robinson is among the top three or four most paranoid people he has evaluated over the course of fifty years as a psychiatrist and approximately 10,500 forensic assessments and clinical evaluations. *See* Rpt. at 8 (citing ECF No. 71 at 2). Dr. Mills disagrees that Robinson's testing results with Dr. Schumacher are indicative of malingering and found that the results would be explained just as well or better if Robinson were simply non-compliant. *Id.* Dr. Mills concluded that Robinson's "paranoia is real" and "consistent with an underlying psychotic disorder." *Id.* (citing ECF No. 71 at 4).

Dr. Mills submitted his Second Letter after reviewing additional documents relied upon by Dr. Schumacher, interviewing Robinson again for about an hour, and observing an interaction between Robinson and his counsel at the end of this second clinical interview. Dr. Mills's opinions remained unchanged, and he concluded that (1) it was more likely that Robinson was disinterested than malingering during Dr. Schumacher's psychological testing; (2) Robinson's extreme paranoia fits into a diagnosis of schizophrenia; (3) brief hospitalization to restore his competence would serve the clinical end of treating him and the

4

legal end of ensuring he can cooperate with counsel; and (4) "Robinson's paranoia is clinically disabling and it *clearly prevents him from assisting in his own defense.*" ECF No. 88 at 2-3. In particular, Dr. Mills described an interaction he observed between counsel and Robinson, when Robinson "indicated his belief that [counsel] w[as] colluding with the judge to disenfranchise him of his rights and to railroad him into prison. He repeatedly refused to listen to [counsel or Dr. Mills's] explanations despite reassurance that [they] were intending to help him[.]" *Id.* at 3.

During the evidentiary hearing, both sides stipulated to Dr. Schumacher and Dr. Mills's qualifications as experts, and the experts testified. Dr. Mills primarily testified about Robinson's extreme paranoia and the obstacles it created for clinical evaluation and representation, as evidenced by the two transcripts from the *Nelson* hearings where Robinson expressed paranoia that everyone (including his counsel) was out to harm him. *See* Rpt. at 10. Dr. Mills testified that while he cannot rule out malingering, Robinson's conduct is more precisely characterized as non-compliant, resistant, or reluctant, and even if Robinson is malingering, that does not diminish his mental illness. *See id.*

Dr. Schumacher testified that while she diagnosed Robinson with antisocial personality disorder, she concluded that he was malingering and did not suffer from any mental disease or defect. *See id.* at 11. She testified about how on multiple tests, Robinson's scores fell significantly below chance levels, suggesting he was purposefully selecting the "wrong" answers to present himself as more impaired. *See id.* at 12. She also listened to four hours of recorded telephone calls and spoke to correctional officers who worked in Robinson's unit, and she testified that Robinson's self-reported mental disorder did not match candid observations of his behavior. *See id.* at 11. She concluded that his conduct is more

5

appropriately characterized as cynicism and mistrust of the legal system and of his attorney rather than an overt delusion grounded in a mental defect. *See id.* at 12.

Faced with opposing interpretations of the evidence, Judge D'Angelo found Dr. Schumacher's opinion more persuasive. *See* Rpt. at 19. What most convinced Judge D'Angelo was that there was no evidence of delusions or paranoia in Robinson's contacts unrelated to the competency evaluation or courtroom proceeding, indicating that Robinson's antisocial personality traits may be exaggerated by efforts to achieve a desired goal in the proceeding rather than distorted by non-reality based beliefs. *See id.* at 19-20. For example, "[a]ccording to Dr. Schumacher, [Robinson] routinely followed institutional procedures, understood instructions from unit staff, and there were no concerns whatsoever about [Robinson's] functioning and behavior" while in detention. *Id.* at 23. In Dr. Schumacher's opinion, Robinson's behavior "appeared to be an 'abnormality,' indicating volitional conduct and potentially manipulation." *Id.*

While Dr. Mills opined that Robinson did not understand the court proceedings and could not meaningfully assist in his defense, he acknowledged that Robinson's conduct may be volitional to a degree and that Robinson has shown some level of understanding of the court proceedings. *Id.* at 24. In sum, Judge D'Angelo gave "greater weight to Dr. Schumacher's opinion due to the multitude and variety of evidence—including evidence of [Robinson's] behavior outside of court proceedings and related contacts—she considered, the longer period of time over which she interacted with Defendant, and the more comprehensive psychological testing she administered and analyzed." *Id.* at 25.

### C. Robinson's Objections And The Government's Response.

Robinson filed Objections, arguing "that two things can be true at once, that Mr. Robinson suffers from antisocial personality disorder and even malingers while also

6

delusional about his attorneys who he thinks are out to get him and are 'compromised.'" Obj. at 2-3. Robinson argues that Judge D'Angelo was merely persuaded by the quantity of evidence from Dr. Schumacher, which is to be expected because the Government has more resources and access to witnesses for competency-related proceedings. *See id.* at 2 ("Distilled in its essence, Judge D'Angelo found Dr. Schumacher more persuasive because she relied on more evidence than Dr. Mills did."); *see also id.* at 4 ("Notwithstanding Dr. Schumacher's ability to spend more time with Mr. Robinson and obtain more information about him from his jailers because she is with BOP, Dr. Mills's much more vast and extensive experience should have carried the day."). Robinson further argues that while Dr. Mills may not have had the opportunity to identify a specific psychotic disorder, "his experience and observations teach him that Mr. Robinson's paranoia stems from a psychotic disorder." *Id.* at 3. Finally, Robinson argues that Dr. Schumacher too easily dismissed Robinson's paranoia and mistrust of his attorneys as an effort to manipulate the legal process, which she could only speculate about. *Id.* at 4.

In the Response, the Government argues that Judge D'Angelo did not blindly credit the quantity of Dr. Schumacher's evidence but that she properly weighed the evidence and found Dr. Schumacher's conclusions, which are based on a longer examination period than Dr. Mills and relied on a greater breadth of probative evidence, more persuasive than Dr. Mills's conclusions. The Report is fully briefed and ripe for adjudication.

## II.   APPLICABLE LEGAL STANDARDS

Any party who disagrees with a magistrate judge's report and recommendations has fourteen days from the date of the decision to seek the district judge's review by filing objections to those specific portions of the report and recommendations with which the party disagrees. Fed. R. Civ. P. 72(b)(2). The district judge must then make a *de novo* determination

7

of each issue to which an objection is made. Fed. R. Civ. P. 72(b)(3); *see United States v. Govea-Vazquez*, 962 F. Supp. 2d 1325, 1327 (N.D. Ga. 2013) ("Where objections are made, a district judge 'shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'"). "Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (citation omitted). *De novo* review "require[s] independent consideration of factual issues based on the record." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (per curiam).

"A defendant has a due process right not to be tried or convicted while incompetent." *United States v. Ramirez*, 491 F. App'x 65, 71 (11th Cir. 2012) (citing *Drope v. Missouri*, 420 U.S. 162, 171-72 (1975)). The federal competency standard is set forth in 18 U.S.C. § 4241, which provides:

> If, after [a] hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.

18 U.S.C. § 4241(d). Section 4241 codifies the standard for competency set forth by the United States Supreme Court in *Dusky v. United States*, 362 U.S. 402, 402 (1960): "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." A defendant "raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." *United States v. Bradley*, 644 F.3d 1213, 1268 (11th Cir. 2011); *see Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996) ("Congress has directed that the

accused in a federal prosecution must prove incompetency by a preponderance of the evidence.").

### III. DISCUSSION

Robinson's Objections boil down to a criticism that when given two competing expert opinions, Judge D'Angelo credited Dr. Schumacher, who opined that Defendant is presently competent to stand trial and has the ability to assist in his defense, over Dr. Mills, who came to the opposite conclusion. Specifically, Robinson raises issue with Judge D'Angelo relying on Dr. Schumacher's evidence-based reports over Dr. Mills's seemingly more impressive qualifications and expertise. *See* Obj. at 4 ("Notwithstanding Dr. Schumacher's ability to spend more time with Mr. Robinson and obtain more information about him from his jailers because she is with BOP, Dr. Mills's much more vast and extensive experience should have carried the day.").

The Eleventh Circuit is clear that when "[f]aced with diametrically opposite expert testimony, a district court does not clearly err simply by crediting one opinion over another where other record evidence exists to support the conclusion." *United States v. Bradley*, 644 F.3d 1213, 1268 (11th Cir. 2011). In *Bradley*, for instance, the Eleventh Circuit affirmed simply where "there [was] no evidence to show that the procedures undertaken [by the Government's expert] were professionally inadequate." *Id.*

The undersigned has independently reviewed the briefing associated with this issue and each expert's respective submissions and agrees with Judge D'Angelo's thorough analysis and well-reasoned conclusions.

The record shows that Dr. Schumacher spent eight to nine hours evaluating Robinson over a period of approximately one year, and she considered recordings of Robinson's jail calls, his prior mental health records, interviews with correctional staff, and the results of a

9

litany of psychological tests that she administered (or attempted to administer) to Robinson. Dr. Schumacher also considered observations of Robinson that were unrelated to the competency evaluation to see if the delusions and paranoia complained of persisted outside of the courtroom and competence proceedings. Dr. Mills, on the other hand, evaluated Robinson twice at the jail for about one hour each, reviewed two *Nelson* hearing transcripts, and spoke with Robinson's mother for approximately thirty minutes regarding Robinson's medical and mental health history.

Having considered the Report and the record in this case, the undersigned finds that Judge D'Angelo's conclusions are well supported. The undersigned agrees with Judge D'Angelo that Dr. Schumacher's are particularly persuasive given the amount of time she spent observing Robinson and the breadth of evidence she considered. Given that Dr. Schumacher had the opportunity to consider so much more information and was able to develop a complete analysis of Robinson and his behavior in so many settings prior to preparing her thorough Reports, the undersigned also agrees that Dr. Schumacher's Reports are more persuasive that Dr. Mills. Although Dr. Mills is certainly highly credentialed, there are gaps in his Report which, through no fault of his own, are clearly attributable to his lack of access to much information and evidence. The undersigned agrees with the Magistrate Judge that Dr. Schumacher's conclusion that Robinson suffers from antisocial personality disorder and malingering, but not a psychotic disorder, and is competent to stand trial is more persuasive than Dr. Mills's contrary conclusion. *See United States v. Merriweather*, No. 07-CR-243-RDP-JEO, 2014 WL 5770213, at *43 (N.D. Ala. Nov. 5, 2014) (finding more credible the opinions of the government experts because they had the greatest ability to observe and monitor the defendant in his daily life over the course of more than one year, and those observations were supported by the continuous observation of the defendant by other medical

and correctional staff). And, even if Robinson does suffer from an unspecified psychiatric disorder, the undersigned agrees with Judge D'Angelo and Dr. Schumacher that he "has the ability to understand the proceedings and assist defense counsel, notwithstanding his antisocial personality disorder, his hostility towards authority, and his mistrust of the legal system[.]" *See* Rpt. at 25.

## IV. CONCLUSION

For the reasons stated above, it is

**ORDERED AND ADJUDGED** that the Report **[ECF No. 138]** is **AFFIRMED AND ADOPTED** and that Defendant's Objections **[ECF No. 145]** are **OVERRULED**. Defendant, Chanard Mikeis Robinson, is hereby found **COMPETENT** to presently stand trial in this case.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 27th day of February, 2026.

_____
**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

Magistrate Judge Ellen F. D'Angelo